IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

CEDRIC CLAYBORNE,

      Plaintiff,

vs.                       No. 06-2579-B/V

ANITA BARNES, et al.

      Defendants.

---

ORDER ASSESSING FILING FEE
ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

Plaintiff Cedric Clayborne, prisoner number 125831, an inmate at the Shelby County Correctional Center ("SCCC")[1] in Memphis, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983 on August 28, 2006, along with a motion for appointment of counsel. The Clerk shall record the defendants as Anita Barnes, Dewhite Arron, Dorris Smith, Peggy Malone, Meldred Butler, and Franklin Perry.

I.   Assessment of Filing Fee

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), a prisoner bringing a civil action must pay the

---

[1] The word "prison" is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

full filing fee of $350 required by 28 U.S.C. § 1914(a).  The in forma pauperis statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, Plaintiff has properly completed and submitted an in forma pauperis affidavit and an inmate trust fund account statement.  Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that Plaintiff cooperate fully with prison officials in carrying out this order.  It is further ORDERED that the trust fund officer at Plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to Plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit.  When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court.  If the funds in Plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in Plaintiff's account and forward them to the Clerk of Court.  On each occasion that funds are subsequently credited to Plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the

2

Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $350.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify Plaintiff's name and the case number on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If Plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at Plaintiff's

prison.  The Clerk is further ORDERED to forward a copy of this order to the warden of Plaintiff's prison to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

II.  Order Denying Motion for Appointment of Counsel

A district court is vested with broad discretion in determining whether to appoint counsel for an indigent civil litigant.  See Lavado v. Keohane, 992 F.2d 601, 604-05 (6th Cir. 1993).  Notably, however, appointment of counsel in a civil case is not a constitutional right, and courts generally do not appoint counsel in a civil case absent a showing of "exceptional circumstances."  Id. at 605-06.  In determining whether an appointment is warranted, courts evaluate the type of case, the complexity of the factual and legal issues involved, and the ability of the litigant to represent himself.  See id. at 606; Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993)("The key [to determining whether exceptional circumstances exist] is whether the pro se litigant needs help in presenting the essential merits of his or her position to the court.  Where the facts and issues are simple, he or she usually will not need such help.")  Appointment of counsel in a civil case is not appropriate when a litigant's claims are frivolous, or when the chances of success are extremely slim.  See Lavado, 992 F.2d at 604-05; Maclin v. Freake, 650 F.2d 885, 887 (7th Cir. 1981)("[B]efore the court is justified in exercising its discretion in favor of appointment, it must first

4

appear that the claim has some merit in fact and law."). As a
general rule, counsel should be appointed in civil cases only if a
litigant has made "a threshold showing of some likelihood of
merit." <u>Cooper v. A. Sargenti Co.</u>, 877 F.2d 170, 174 (2d Cir.
1989).[2] The Court concludes that an appointment of counsel is not
warranted. Plaintiff's complaint is to be dismissed; therefore his
motion for appointment of counsel is DENIED.

III. <u>Analysis of Plaintiff's Claims</u>

Clayborne alleges that on June 27, 2006, while he was on his
way to work, he was pushed twice by Defendant Anita Barnes, the
kitchen supervisor at the SCCC. He contends that Barnes pushed him
for no reason, causing him to hit his arm and back on the wall.
Plaintiff further alleges that Defendant Dorris Smith, also a
supervisor, observed the incident and told Clayborne and Barnes to
fill out an incident report.

The complaint claims that Defendants Arron Dewhite and Peggy
Malone refused Plaintiff's request for a grievance form. Plaintiff
alleges that he received a grievance form from Hary Thorp after
Dewhite and Malone went on break. Clayborne states that he sent
the grievance to Franklin Perry and later wrote letters to
Defendants Meldred Butler and Dorris Smith about the grievance but

---

[2]      The Second Circuit elaborated: "Courts do not perform a useful
service if they appoint a volunteer lawyer to a case which a private lawyer would
not take if it were brought to his or her attention. Nor do courts perform a
socially justified function when they request the services of a volunteer lawyer
for a meritless case that no lawyer would take were the plaintiff not indigent."
<u>Id.</u>

has received no response. Plaintiff contends his right to be free from cruel and unusual punishment has been violated and he seeks compensatory damages.

Clayborne does not allege facts demonstrating that he fully exhausted the grievance procedure available at the SCCC. Thus, his allegations are insufficient to satisfy the exhaustion requirement of § 1997e(a). See Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998). Despite this failing, however, 28 U.S.C. 1997e(c)(2) provides that a court may, despite a lack of exhaustion, dismiss a frivolous claim:

> In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the Court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c)(2). This Court, therefore, analyzes prisoner complaints for failure to state a claim and frivolity regardless of exhaustion of grievance procedures.

The Eighth Amendment prohibits cruel and unusual punishment. See generally Wilson v. Seiter, 501 U.S. 294 (1991). An Eighth Amendment claim consists of objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298; Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at

6

834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298.  The
subjective component requires that the official act with the
requisite intent, that is, that he have a "sufficiently culpable
state of mind."  Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297,
302-03.  The official's intent must rise at least to the level of
deliberate indifference.  Farmer, 511 U.S. at 834; Wilson, 501 U.S.
at 303.

In the context of excessive force, the objective and
subjective components of Eighth Amendment analysis merge into a
single inquiry because "[w]hen prison officials maliciously and
sadistically use force to cause harm, contemporary standards of
decency always are violated."  Hudson, 503 U.S. at 9.  Thus, the
relevant inquiry in any excessive force claim is "whether force was
applied in a good-faith effort to maintain or restore discipline,
or maliciously and sadistically to cause harm."  Whitley v. Albers,
475 U.S. 312, 320-21 (1986).

In determining whether the force was applied in a malicious or
sadistic manner, the Court should consider such factors as the need
for the application of the force, the amount of force used, and the
extent of the injury inflicted.  Whitley, 475 U.S. at 319.  "Not
every push or shove, even if it may later seem unnecessary in the
peace of a judge's chambers, violates a prisoner's constitutional
rights."  Johnson, 481 F.2d at 1033.  Indeed, prison officials are
entitled to use physical force, including personal restraint

weapons, to compel obedience by inmates.  See, e.g., Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992).  The reasonableness of the use of force must be viewed within the context in which it occurred.  Thus, greater force may be reasonable when used in response to a serious disturbance or other acts of inmate violence.

Prison officials are to be accorded deference in determining what steps need to be taken to preserve internal order and maintain institutional security.  Bell v. Wolfish, 441 U.S. 520, 547 (1979).  Courts should not second guess prison officials about which of a range of constitutional methods they employ to suppress inmate disturbances.

Plaintiff alleges that he was pushed twice by Barnes without provocation.  Although he alleges that he hit his arm and back on the wall, Clayborne fails to allege that he sustained injuries or required medical attention.

> The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, providing that the force is not of a sort "'repugnant to the conscience of mankind.'"

Hudson, 503 U.S. at 10-11 (citations omitted).  There is nothing in Plaintiff's complaint to suggest that Barnes' pushes were either malicious or sadistic.  See Whitley, 457 U.S. at 320-21.  The allegations are insufficient to establish any claim of use of excessive force.

Clayborne's claims against Defendant Smith stem from her purported failure to intervene when Defendant Barnes pushed him. "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also 'take reasonable measures to guarantee the safety of the inmates.'" Curry v. Scott, 249 F.3d 493, 506 (6th Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The law is clear that "a correctional officer who observes an unlawful beating may... be held liable under § 1983 without actively participating in the unlawful beating." McHenry v. Chadwick, 896 F.2d 184, 188 (6th Cir. 1990); see also Durham v. Nu'Man, 97 F.3d 862, 867-68 (6th Cir. 1996) (holding, in the context of hospital security officers and nurses who observed beating, that duty to protect is clearly established). To hold Smith liable for Barnes' action, Plaintiff must prove that "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997); see also Carico v. Benton, 68 Fed. Appx. 632, 639 (6th Cir. June 26, 2003). Plaintiff has not established that the actions of Barnes in shoving him twice constituted excessive force. Therefore, his claims against Smith also fail.

9

Clayborne's allegations against the remaining Defendants Dewhite, Malone, Butler, and Perry arise from the failure to provide Plantiff with a grievance form or response to his grievance. There is no inherent constitutional right to an effective prison grievance procedure. See LaFlame v. Montgomery County Sheriff's Department, 3 Fed. Appx. 346, 348 (6th Cir. 2001) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996)).[3] Thus, a § 1983 claim cannot be premised on contentions that the grievance procedure was inadequate.

The participation of Defendants Dewhite, Malone, Butler, and Perry in the events alleged in this complaint was limited to the processing of Plaintiff's administrative grievances. The denial of the appeal of a prisoner's grievance cannot in itself constitute sufficient personal involvement to state a claim of constitutional dimension. Simpson v. Overton, 79 Fed. Appx. 117, 2003 WL 22435653 (6th Cir. 2003); see also Martin v. Harvey, 14 Fed. Appx. 307, 2001 WL 669983, at *2 (6th Cir. 2001)("The denial of the grievance is not the same as the denial of a request to receive medical care."). Moreover, § 1983 liability may not be imposed against the defendants for "a mere failure to act" based upon information contained in the grievance. See Shehee v. Luttrell, 199 F.3d 295,

---

[3]     Although citation to unpublished Sixth Circuit precedents is disfavored, this case is referred to in the absence of clear published case law from this Circuit "because it establishes the law governing the present action and 'there is no [Sixth Circuit] published opinion that would serve as well.'" Norton v. Parke, 892 F.2d 476, 479 n.7 (6th Cir. 1989).

300 (6th Cir. 1999); <u>Lillard v. Shelby County Bd. of Educ.</u>, 76 F.3d 716, 727-28 (6th Cir. 1996).

Although failure to investigate may give rise to § 1983 supervisory liability, <u>see</u> <u>Walker v. Norris</u>, 917 F.2d 1449, 1457 (6th Cir. 1990) and <u>Marchese v. Lucas</u>, 758 F.2d 181, 188 (6th Cir. 1985), the reasoning in <u>Walker</u> and the analysis in its progeny indicate that evidence of the "failure to investigate" can only establish municipal liability. In <u>Dyer v. Casey</u>, 1995 WL 712765, at **2 (6th Cir. 1995), the Court stated that "the theory underlying [<u>Marchese</u> and <u>Lucas</u> (citations omitted)] is that the municipality's failure to investigate or discipline amounts to a 'ratification' of the officer's conduct."

In <u>Walker</u>, the Sixth Circuit distinguished <u>Marchese</u> because the Court "imposed the broad investigative responsibilities outlines in <u>Marchese</u> upon the Sheriff in his official capacity." <u>Walker</u>, 917 F.2d at 1457 ("The Sheriff is sued here in his official capacity and in that capacity, he had a duty to both know and act."). In 1998, the Sixth Circuit affirmed the dismissal of a claim of supervisory liability based on the "failure to investigate" stating:

> Young's claim against defendants McAninch and Goff is based solely on their alleged failure to investigate defendant Ward's behavior towards Young. Although Young stated that defendants McAninch and Goff had knowledge of his allegations against defendant Ward, this is insufficient to meet the standard that they either condoned, encouraged or knowingly acquiesced in the misconduct.

Young v. Ward, 1998 WL 384564 *1 (6th Cir. 1998).  Any claims against Dewhite, Malone, Butler, and Perry based upon ratification or failure to take any remedial measure are also without merit and fail to state a claim upon which relief may be granted.

It is clear from the face of Plaintiff's complaint that he cannot satisfy either the objective or subjective component of an Eighth Amendment claim against any defendant.  Therefore, Plaintiff's complaint fails to state a claim upon which relief may be granted and is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IV.  Appeal Issues

The next issue to be addressed is whether Plaintiff should be allowed to appeal this decision in forma pauperis.  Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  It would be inconsistent for a district court to determine that a complaint which fails to state a claim upon which relief may be granted has sufficient merit to support an appeal in forma pauperis.  Accordingly, the same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff is not taken in good faith, and Plaintiff may not proceed on appeal in forma pauperis.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case.[4]  The United States Court of Appeals for the Sixth Circuit has held that a certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b).  McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997).  McGore sets out specific procedures for implementing the PLRA.  Therefore, Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the first dismissal in this district of one of his cases for failure to state a claim.

IT IS SO ORDERED this 16th day of March, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[4]      Effective April 9, 2006, the fee for docketing an appeal is $450. See Judicial Conference Schedule of Fees, § 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the Clerk of the district court, by the appellant or petitioner.